INTERMELA et al. v. PERKINS.

(Circuit Court of Appeals, Ninth Circuit. May 5, 1913.)

No. 2,154.

1. COURTS (§ 328*)—FEDERAL COURTS—AMOUNT IN CONTROVERSY—JURISDICTION.

Where plaintiff sued a city treasurer and his surety to recover damages for alleged wrongful refusal to pay a city warrant, and not on the warrant, the measure of defendant's liability was the face of the warrant with accrued interest to the time defendant's liability became fixed, which sum, and not the face of the warrant without interest, was the amount in controversy for the purpose of determining federal jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 890–896; Dec. Dig. § 328.*

Jurisdiction of federal courts as determined by amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennet-Stribling Shoe Co. v. Roper, 36 C. C. A. 459; O. J. Lewis Mercantile Co. v. Klepner, 100 C. C. A. 288.]

2. MUNICIPAL CORPORATIONS (§ 173*)—WARRANTS—PAYMENT—EXISTENCE OF FUNDS—FINDINGS.

In an action against a city treasurer and his surety for alleged wrongful refusal to pay a city warrant, evidence *held* to sustain a finding that the city treasurer had funds applicable to the payment of the warrant at the time of plaintiff's demand.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 399–409; Dec. Dig. § 173.*]

3. MUNICIPAL CORPORATIONS (§ 904*)—CITY WARRANTS—PAYMENT—RESTRICTION—AUTHORITY OF CITY COUNCIL.

Under Rem. & Bal. Code Wash. § 3949, providing that city treasurers shall make calls for warrants in certain contingencies, and that they may be paid in the order of issuance, and it shall be the duty of such treasurer to pay on demand in the order of issuance any warrants when there shall be in the treasury sufficient funds applicable thereto, the city coun-

---

cil had no power to restrict the treasurer to the payment of certain types of warrants without a special order of the council, and hence legal holders of warrants on the indebtedness fund had a right to have their warrants paid in regular course as funds became available and applicable to such payment.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1889, 1890; Dec. Dig. § 904.*]

**4. JUDGMENT (§ 636*)—CONCLUSIVENESS—JURISDICTION.**

The superior court of Washington in the exercise of its general jurisdiction had authority to determine whether a city of the state became liable generally on contracts for local improvements, where its authorities had omitted through neglect of duty or through irregularity of procedure to make proper assessments for such improvements, and, having such jurisdiction, a judgment holding that the city was liable, whether correct or erroneous, was conclusive against the city, and a bar to a subsequent contest of the validity of a city warrant issued in payment of the judgment on the same ground.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1150; Dec. Dig. § 636.*]

**5. MUNICIPAL CORPORATIONS (§ 863*)—INDEBTEDNESS—LIMIT.**

A city is without power to incur an indebtedness beyond specified limitations fixed by its charter or by law under which it derives its powers, nor would a court have power to require a city to do an act, or pay a warrant beyond the power accorded to it.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1824–1827; Dec. Dig. § 863.*

Constitutional and statutory limitations of municipal indebtedness, see note to City of Helena v. Miller, 36 C. C. A. 6.]

**6. MUNICIPAL CORPORATIONS (§ 898*)—CITY COUNCIL—"ADJOURNED MEETING" —"RECESS"—ISSUANCE OF WARRANT.**

Rem. & Bal. Code Wash. § 7681, inhibits the passing of any ordinance, the letting or entering into any contract, or allowing any bill for the payment of money at any special meeting, or at any adjourned regular or special meeting of the city council. A city council met in regular session at 7:30 p. m., February 15, 1898, and, after reading the minutes and transacting some business, on motion "took a recess until 3 o'clock p. m. February 16, 1898," and on that day met at the appointed time "after expiration of recess in continuation of yesterday's meeting," and took a further recess "until 4 o'clock p. m. February 17, 1898," on which latter date the warrant in question was ordered issued. *Held,* that while technically a recess applies to an intermission taken by a deliberative body from time to time during a day, and "adjournment" means a suspension over a day or to some definite time in the future or without day, an adjournment may terminate a meeting, but not the session, and when taken from day to day, or even to a day certain, does not interrupt the business of the session, it was the intention and purpose of the city council to hold a continuous session, and hence, though in reality there was an adjournment from day to day, such adjournments were lawful as within the intendment of the statute, and the warrant would not be held invalid as issued at an adjourned meeting.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1883; Dec. Dig. § 898.*

For other definitions, see Words and Phrases, vol. 1, pp. 190–192; vol. 7, p. 5998.]

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; C. H. Hanford, Judge.

---

Action by David Perkins against Charles L. Intermela and the American Surety Company. Judgment for plaintiff, and defendants bring error. Affirmed.

Intermela is the treasurer of the city of Port Townsend, Wash., and the American Surety Company is the surety upon his official bond. This action was instituted December 19, 1910, by Perkins, the holder of a city warrant drawn upon the indebtedness fund, to recover against the city treasurer, and upon his official bond, for a breach of duty as such officer in failure to pay the warrant when in funds. The warrant was issued to Alonzo Elliott February 18, 1898, and Perkins holds it by assignment from him. It was presented for payment February 19, 1898, and indorsed, "Not paid for want of funds."

It is shown that on the 1st day of December, 1910, and for a long time prior thereto, there was and had been money belonging to the indebtedness fund of the city sufficient to pay the warrant in full after deducting from the total amount of money in the treasurer's hands belonging to such fund a sufficient sum to pay all warrants, certificates, and other obligations and indebtedness of said city which are and were entitled to be paid out of such fund before the payment of said warrant.

The defendants, Intermela and the Surety Company, answer that said warrant was issued in satisfaction of a judgment made and rendered November 16, 1897, in the superior court of the state of Washington for Jefferson county, in a cause entitled Alonzo Elliott v. City of Port Townsend. A copy of the complaint in said cause is set out, showing that on or about August 31, 1888, the city council duly and regularly determined to make certain street improvements, and passed and adopted the necessary ordinances for the purpose; that thereafter appropriate steps were taken for making such improvements, bids were advertised for, and a contract duly let, and the improvements were regularly made and accepted by the city; that a warrant in the sum of $1,000, payable out of the Washington Street improvement fund, was issued February 11, 1889, to the contractor, W. C. Williams, as his stipulated consideration for making such improvements, which was afterwards assigned to the plaintiff, Alonzo Elliott, and bears an indorsement as of February 14, 1889, "Not paid for want of funds"; that under its charter the city was charged in such cases with the duty of constituting special assessment districts and levying assessments upon the property within such districts sufficient to defray the costs of the improvement, and of collecting such assessments and applying the fund thus assembled to the payment of such costs; that the city did create such a special assessment district with a view to providing the requisite funds for paying such costs, but failed in its duty to regularly assess the property therein with the costs of such improvement, and for that reason was unable to enforce such assessments or to require the payment thereof, and thereby failed to procure the funds necessary to pay the cost of said improvement evidenced by the warrant issued as aforesaid, and that at the time of the incurring of said indebtedness for such improvement the indebtedness of the city was not equal to 1½ per cent. of the value of the taxable property of the city.

Based upon this complaint, and for a further reason that the warrant was ordered issued at a special, not a regular meeting of the city council, defendants further answered that the judgment is void, and that the warrant issued in satisfaction thereof is likewise void.

For a second defense, the defendants answer that the action was not commenced within six years.

And for a third defense they answer that at the time the judgment was rendered as alleged in the first separate answer, and before the issuance of the warrant described in the complaint, there were outstanding about $130,000 street grade warrants on special funds of local improvement districts; that the city appealed from said judgment, but before the appeal was perfected entered into an agreement with the warrant-holders for street improvements, including Elliott, the plaintiff in said cause, whereby it issued warrants bearing 6 per cent. interest on the indebtedness fund in satisfaction of the judg-

ments entered upon the previous warrants, including the judgment in the Elliott case; that long before the city entered into such agreement the Supreme Court of the state of Washington had decided that under no circumstances can the city be held liable generally on a street grade warrant; that thereafter, to wit, about January 3, 1899, the city council repudiated and abandoned said agreement, and refused to recognize as valid any of such "Indebtedness Fund" warrants, and has since continued to refuse to recognize the same as valid obligations of the city. It is further alleged that at the time such indebtedness fund warrants were issued the city was indebted beyond its constitutional limit of indebtedness for other purposes, and that at no time has the assent of three-fifths of the voters within the city voting at any election been had authorizing the incurring of said street grade indebtedness.

The issues having been completed by a reply, trial was had before the court (a jury being waived), which resulted in a judgment for plaintiff. From this judgment the defendants prosecute a writ of error,

U. D. Gnagey, of Port Townsend, Wash., and L. B. Stedman, of Seattle, Wash., for plaintiffs in error.

Charles E. Shepard, of Seattle, Wash., for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). [1] It is first insisted by defendants' counsel that the court is without jurisdiction because the matter in dispute does not exceed $2,000 exclusive of interest and costs. To this it may be answered that this action is not upon the warrant, but against the city treasurer, and upon his official bond, for a breach of his official duty to the damage of the plaintiff. No action accrued against the treasurer until he was in funds to pay the warrant and it had been duly presented for payment; but, being in funds, the treasurer was bound to pay the warrant with accumulated interest. The liability of the treasurer arises by reason of his refusal to discharge an official duty towards the plaintiff, and sounds in damages, the measure of which is the amount of the warrant with accumulated interest to the time his liability became fixed. Had the city been sued, the case would have been different, because the obligation would then have been upon the warrant, and the principal without interest would have been the measure of jurisdiction.

[2] Another question presented is whether, the warrant being drawn on the indebtedness fund, it has been shown prima facie that funds were in the hands of the treasurer at the time of the demand for payment applicable to the payment of such warrant. Section 636, Hill's Ann. Codes and Statutes, accords to the city council of cities of the class of Port Townsend power (subdivision 9) to levy and collect annually a property tax to be apportioned to a general fund, a street fund, and a sewer fund. Section 647 provides, among other things, that all moneys received from licenses, street poll tax, fines and penalties, and forfeitures shall be paid into the general fund. In 1897 the Legislature adopted an act (Laws 1897, c. 84) providing for the maintenance by such a municipality of a "current expense fund," and after the first day of February, 1898, of an "Indebtedness Fund." Moneys collected from licenses were required to be credited and applied by the

treasurer to the "Current Expense Fund," and the municipality was required to levy and collect an annual tax for the payment of current expenses of not to exceed 10 mills on the dollar, and "a tax for the payment of indebtedness (if any indebtedness exists) not exceeding six mills on the dollar," the moneys collected to be accordingly credited by the treasurer to the respective funds. Section 7 provides:

"All moneys collected on and after the first day of February, 1898, from taxes of the year 1896, and previous years, and from penalty and interest thereon, shall be paid into the indebtedness fund."

It has been decided in the state of Washington that the fund to be known under the act of 1897 as the "Indebtedness Fund" supplanted the original general fund, and that all existing warrants should be paid therefrom. State ex rel. Polson v. Hardcastle, 68 Wash. 548, 553, 124 Pac. 110.

The question presented arises on a motion for a nonsuit interposed both at the conclusion of the plaintiff's testimony and at the conclusion of the entire testimony.

There are to be found in the testimony as certified by the bill of exceptions certain letters from the county treasurer of Jefferson county, Wash., to the city treasurer, transmitting certain tax moneys received from tax rolls and from sales of county delinquent property which had previously been acquired upon tax foreclosure sales. One list, transmitted to the city treasurer January 11, 1909, shows money received:

| | |
|---|---|
| From sales of county real estate, lands and premises | $ 851 23 |
| From 1904 tax rolls | 96 |
| From 1905 tax rolls | 1 44 |
| From 1906 tax rolls | 8 14 |
| From 1907 tax rolls | 1,922 86 |
| Total | $ 2,784 63 |

Another list which is cast in the record shows remittances ranging from February 6, 1909, to May 10, 1910, aggregating $7,369.58. All the sales referred to are of county property that had been acquired by the foreclosure of tax liens. The trial court found, as one of its conclusions of fact, that between January 4, 1910, and December 1, 1910, the city treasurer received, as the city's share of the proceeds of the sale of property that had been forfeited to the county for nonpayment of taxes, the sum of $4,674.69, and that the warrant was presented December 1, 1910. It does not appear clearly how the court arrived at this specific conclusion. But, turning to the sources of the indebtedness fund, we find it may be replenished by virtue of the seventh section of the act of 1897 by all moneys collected from the taxes of the year 1896 and previous years, and the 6 per cent. levy required to be made annually under the provisions of said act. Of moneys turned into the hands of the city treasurer $1,933.40 was from the tax rolls of 1904, 1905, 1906, and 1907, and the balance, namely, $8,220.81, was derived from sales of county real estate which had previously been acquired under foreclosure sales of tax liens. When the taxes were assessed forming the basis of the liens does not appear. It is fair to

presume that a part of the moneys at least derived from the tax rolls of 1904, 1905, 1906, and 1907 was on account of tax levies made for the indebtedness fund. And the same inference would obtain respecting the moneys derived from sales of the county property. In 1906 the city council adopted Ordinance No. 722, which was unrepealed at the time of the trial, and which required the city treasurer to turn into the indebtedness fund all moneys received by the city from the county for its share of the proceeds of the sales of any county property, and all moneys from city taxes, penalties, and interest, with certain exceptions, until all the legal outstanding claims against the indebtedness fund should have been paid. This is tantamount to a declaration on the part of the city that funds were becoming available from which the indebtedness fund was entitled to be replenished. So that, taking into consideration the receipts of moneys by the city treasurer from taxes and sales of county real property in which the city had an interest accruing through former tax levies, and the manner of the city's dealing with such funds and other funds, accrediting the same to the indebtedness fund, it would seem that there was competent evidence adduced from which the trial court could reasonably deduce its finding that the city treasurer was in funds sufficient to pay the warrant, and applicable thereto, at the time of its presentation. There is far from being such a lack of evidence upon the subject as that this court will set aside the findings of the trial court.

[3] As it respects the inhibition in the latter part of section 9 of Ordinance No. 722, restricting the city treasurer to the payment of certain types of warrants without the special order of the city council, we think it was beyond the power of the city council so to restrict the treasurer, and that legal holders of warrants upon the indebtedness fund had the right to have their warrants paid in regular course as funds became available and applicable to their payment. Section 3949, Remington & Ballinger's Annotated Codes and Statutes of Washington, provides that the city treasurer shall make calls for warrants in certain contingencies, and that they may be paid in the order of issuance, and it is further provided:

"That it shall be the duty of any such treasurer to pay on demand, in the order of their issue, any warrants when there shall be in the treasury sufficient funds applicable to such payment."

In other words, the city council could not, under the laws by which it is governed, postpone some warrants and prefer others, all being drawn on the same fund. If the Legislature of the state cannot divert a fund to the detriment of a warrant holder (Hardcastle Case, supra), much less can the city council do so, and that without any semblance of authority from the Legislature.

[4] The next contention of the defendants' counsel is that the superior court of the state of Washington in and for Jefferson county was without power to hear and determine the cause of Alonzo Elliott v. City of Port Townsend (the cause set up by the answer), and render judgment therein. The question presented for the court's consideration in the Elliott Case was whether the city of Port Townsend became liable generally upon contracts with the city for making local im-

provements, where the city authorities omitted through neglect of duty, or failed through irregularity of procedure, to make proper assessments against the property benefited by which to provide the funds necessary to meet the expenses of such local improvements.

[5] Without doubt, a city would be without power to incur an indebtedness beyond specific limitations fixed in its charter, or by law under which it derives its powers; nor would a court have power to require a city to do a thing beyond the power accorded it. This is not the question here, however. There is no evidence in the record showing that the city of Port Townsend was indebted beyond its statutory limitations at the time the indebtedness was incurred for the local street improvements in question, although the answer alleges facts showing that such was the case. Further than this, it is at least a disputed question whether such indebtedness as may be thrust upon the city by neglect or refusal to perform its obligations with contractors for local improvements, in providing funds for the payment of such contractors, falls within the inhibition against incurring indebtedness beyond a specified sum. Baker v. City of Seattle, 2 Wash. 576, 27 Pac. 462; Winston v. City of Spokane, 12 Wash. 524, 41 Pac. 888; McEwan v. City of Spokane, 16 Wash. 212, 47 Pac. 433; Denny v. City of Spokane, 79 Fed. 719, 25 C. C. A. 164. But, be that as it may, in any event the question is one involving the application of general law in connection with statutory construction, which a court of general jurisdiction is competent to entertain and decide.

It is stoutly urged, however, that the city of Port Townsend could not be rendered liable generally to contractors for local street or grade improvements where within the plan for such local improvements a local assessment is contemplated for meeting the expenses of the improvements, and that, therefore, it was beyond the power of the superior court to pass judgment against the city upon such an alleged liability. The plaintiff controverts this position, and contends that the Elliott judgment is a bar to defendants' insisting upon the invalidity of the warrant which was issued by the city to satisfy such judgment. It does not seem to be contended that the city was without authority to construct local improvements by general tax, or from its general funds, without resort to local assessments for the purpose.

To get our bearing more particularly, the Elliott judgment was rendered November 16, 1897, and the warrant was issued in satisfaction thereof February 18, 1898. Prior to these dates, it had been several times decided by the Supreme Court of the state of Washington that a general liability arose against the city as upon an implied agreement upon its refusal or failure to perfect and collect a proper assessment in special districts, adequate to meet the expenses incident to making local improvements. It was so held in effect in Stephens v. City of Spokane, 11 Wash. 41, 39 Pac. 266. The case was again before the court (14 Wash. 298, 44 Pac. 541, 45 Pac. 31), and the doctrine was adhered to, but in a somewhat restricted sense, the court holding that the city would not become liable generally unless it appeared that it had failed to take steps to provide such special fund, or had been so negligent in its attempt to create the fund that the right thereto had

205 F.—39

been lost; or, in other words, where the conditions were such that the city had lost its power to enforce the local assessments. Again, in McEwan v. City of Spokane, supra, it was held that, where there was an unreasonable delay on the part of the city in enforcing the local assessments, it would render itself liable generally. This case was decided December 15, 1896. The principle was reaffirmed in Bank of British Columbia of Victoria v. City of Port Townsend, 16 Wash. 450, 47 Pac. 896. This as late as February 11, 1897. So that up to this time it may be said the doctrine rendering the city liable generally for neglect and refusal properly to provide local assessments to meet the expenses incident to local improvements was fairly well settled in the state. On July 9, 1897, the Supreme Court in German-American Savings Bank v. Spokane, 17 Wash. 315, 47 Pac. 1103, 49 Pac. 542, 38 L. R. A. 259, reviewed all of its previous holdings on the subject, and held that there can be no recovery of the city at all while the assessment plan can be enforced in any way, and expressly reaffirmed the doctrine laid down in Stephens v. City of Spokane, 14 Wash. 298, 44 Pac. 541, 45 Pac. 31, supra. In another case, decided March 7, 1898, namely, Wilson v. City of Aberdeen, 19 Wash. 89, 52 Pac. 524, the court held pointedly that the city could not be rendered liable generally; although the remedy to collect from the special fund was lost. This case was followed still later in North Western Lumber Co. v. City of Aberdeen, 22 Wash. 404, 60 Pac. 1115, and such seems to be the present doctrine of the court.

Now, recurring to the question of the power of the court in the Elliott Case to render judgment, it will be seen that at the time even the Supreme Court of the state was in a vacillatory and transition period from the doctrine of implied liability on the part of the city for failure in street assessments for local improvements to a doctrine of absolute nonliability. The doctrine in either phase was the result of the application of general law in connection with the construction of the statutes governing and limiting the powers of the cities. While in Washington it was first held that the general liability of the cities is to be implied, yet elsewhere it has been held that the liability arises in tort. Little v. City of Portland, 26 Or. 235, 37 Pac. 911. So that the statutes alone do not determine the matter by positive and unalterable edict, circumscribing by absolute letter the power of the cities in the respect under consideration. A court of general jurisdiction is possessed of power to entertain cognizance to examine into and determine as to all legal questions of common dispute, of which the question involved in the Elliott Case was one. There can be no stronger proof of that than the fact that the Supreme Court decided both ways upon the subject. The Supreme Court has power to decide and determine touching the question, as it has finally done. Can it be doubted that it had as absolute power to decide as it did formerly, and to render judgment accordingly? If it had such power, what shall we say of the power of the superior court exercising general but primary jurisdiction to hear and determine, and to render judgment in the first instance? The question is not whether the superior court decided rightly or wrongly, but whether it had power to decide at all. If it had such

power, an erroneous judgment could not affect its jurisdiction. It seems to us that the court had ample jurisdiction of the subject-matter, and, having such jurisdiction, it had the power to determine relative thereto, and to give and render judgment as its considerations might impel it.

Further than this, under the state of the holding of the Supreme Court at the time the judgment was given and rendered in the Elliott Case, it could not then be regarded that the Supreme Court had wholly reversed its doctrine upon the subject, and the superior court might well have been honestly mistaken as to the true holding of the Supreme Court, as subsequently interpreted by later decisions.

We conclude, therefore, that the judgment in the Elliott Case, as pleaded by the defendants and produced in evidence by the plaintiff, is conclusive against the city, and therefore a bar to the defendants now contesting the validity of the warrant in question issued in pursuance of such judgment.

[5] Lastly, it is urged that the warrant is void as having been issued at an adjourned meeting of the city council. The testimony shows that the city council met in regular session at 7:30 p. m. February 15, 1898, and, after reading the minutes and transacting some business, on motion "took a recess until 3 o'clock p. m. February 16, 1898"; that on February 16, 1898, the city council met at 3 o'clock p. m. "after expiration of recess in continuation of yesterday's meeting," and took a further recess "until 4 o'clock p. m. February 17, 1898." It was on the latter date that the warrant was ordered issued. The statute (R. & B. Code, § 7081) inhibits the passing of any ordinance, the letting or entering into any contract, or allowing any bill for the payment of money at any special meeting, or at any adjourned regular or special meeting. Manifestly the purpose of the statute is to afford definite notice to all persons concerned and to the general public when they may expect measures of the kind to receive the attention of the city council and to be acted upon by it, and to afford an opportunity for protest or hearing should such privilege be desired. The statute has prescribed, therefore, that all such business shall be transacted at a regular meeting of the council, and not at a special or an adjourned meeting. In the present case the council met at a regular meeting, and, finding itself unable to complete or transact the business in hand, took a recess, so termed, until the next day, and in like manner took another recess to another day, at which time the business in hand was completed, and the council adjourned. Now, it is claimed that these recess meetings were in reality adjourned meetings, and that the warrant is void as having been directed to issue at such a meeting. The business resulting in the issuance of such warrant was taken up at the regular meeting, and was brought before the council at each of the recess meetings until finally disposed of at the last meeting, so that the especial business was kept in hand until it was finally concluded, and it would seem that the purpose of the statute respecting notice to interested persons and the public was practically conserved.

Technically speaking, "recess" probably applies to an intermission taken by a deliberative body from time to time during a day, and "ad-

journment" where taken over a day, or to some definite time in the future, or without day. But an adjournment from day to day does not bring the session to a close. It may terminate the meeting, but not the session. Adjournments taken from day to day, or even to a day certain, do not interrupt the business of the session. It proceeds as of the same session. Roberts' Rules of Order. Of course, to call a recess an adjournment or vice versa does not alter the fact. But in the case here presented it was the intention and purpose of the city council to hold a continuous session, and hence it attempted to recess from day to day, while in reality it may be said it adjourned from day to day. However, giving its acts this significance, we are disposed to believe that adjournment from day to day, where impelled by the business in hand, is not inimical to the statute, and that such adjournments as made were lawful, as being within the spirit and intendment, if not the letter thereof.

The judgment of the District Court will be affirmed.