[S. F. No. 20620. In Bank. Mar. 2, 1961.]

SAN FRANCISCO UNIFIED SCHOOL DISTRICT, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents; JOHN EARL CONNER et al., Real Parties in Interest.

Dion R. Holm, City Attorney, and George E. Baglin, Deputy City Attorney, for Petitioner.

Bledsoe, Smith, Cathcart, Johnson & Phelps and Robert A. Seligson as Amici Curiae on behalf of Petitioner.

No appearance for Respondents.

Hoberg, Finger, Brown & Abramson and Leonard Shaw for Real Parties in Interest.

SCHAUER, J.—Petitioner seeks mandamus to compel respondent superior court to order the production of certain reports made by a physician to the attorneys for John Earl Conner, real party in interest,[1] who has brought a personal injury action against petitioner. The physician who made the reports had operated on and treated Conner for the injury which is the subject of his action. We have concluded, for reasons hereinafter explained, that Conner's contention that the reports are protected by the attorney-client privilege is without merit, and that the peremptory writ should issue.

In the complaint in the personal injury action it is alleged that John Earl Conner, a student at Lincoln High School in San Francisco, suffered injuries when he was struck on the head by a shot (a spherical weight, usually weighing 16 pounds, used for putting in athletic events) which had been put by another person while the plaintiff Conner was participating in an athletic program for students. He was operated on by Dr. William Newsom, who continued to see and treat him following his release from the hospital.

Petitioner school district subpoenaed Dr. Newsom for a deposition and production of all his records pertaining to his "examination, care and treatment" of Conner. At the deposition, taken on August 15, 1960, Dr. Newsom answered fully all questions then put to him by petitioner, and made available all records and reports in his files dealing with his care, treatment and diagnosis of Conner, with the exception of copies of three reports sent to Conner's attorneys at the latter's request, under dates of March 21, 1958, May 27, 1959,

---

[1] Also named as a real party in interest is Earl Conner, who is the father and guardian ad litem of John Earl Conner, a minor.

and January 8, 1960. Among the office visits by Conner to Dr. Newsom were five made on various dates from March, 1958, to December, 1959. Dr. Newsom testified that he had no notes of those five visits and had no independent recollection of them. When petitioner asked to see the copies of the three reports made by Dr. Newsom to Conner's attorneys, the attorneys requested Dr. Newsom to refuse to produce his copies, claiming they were protected by the attorney-client privilege. Petitioner then moved for an order requiring Dr. Newsom to produce his copies, the motion was denied, and this mandamus proceeding followed.

As grounds for issuance of the writ petitioner correctly contends that the attorney-client privilege (Code Civ. Proc. § 1881, subd. 2)[2] cannot be invoked here to avoid inspection of these copies.

The record shows that Dr. Newsom was called in to diagnose and treat Conner for the injuries for which recovery is now sought, and that the information which came to Dr. Newsom through communications made to him by Conner as well as other reports and tests was all gained in his capacity as Conner's treating doctor. Under the provisions of subdivision 4 of section 1881 of the Code of Civil Procedure,[3] this information was privileged until the privilege was waived by Conner by bringing the personal injury action. As explained in *City & County of San Francisco* v. *Superior Court* (1951), 37 Cal.2d 227, 232 [4] [231 P.2d 26, 25 A.L.R.2d 1418], "The whole purpose of the [physician-patient] privilege is to preclude the humiliation of the patient that might follow disclosure of his ailments. When the patient himself discloses those ailments by bringing an action in which they are in issue, there is no longer any reason for the privilege. The patient-litigant exception precludes one who has placed in

---

[2]Section 1881, subdivision 2: "An attorney can not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment; nor can an attorney's secretary, stenographer, or clerk be examined, without the consent of his employer, concerning any fact the knowledge of which has been acquired in such capacity."

[3]Section 1881, subdivision 4: "A licensed physician or surgeon cannot, without the consent of his patient, be examined in a civil action, as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient; . . . provided further, that where any person brings an action to recover damages for personal injuries, such action shall be deemed to constitute a consent by the person bringing such action that any physician who has prescribed for or treated said person and whose testimony is material in said action shall testify. . . ."

issue his physical condition from invoking the privilege on the ground that disclosure of his condition would cause him humiliation. He cannot have his cake and eat it too.''

█ In the same case it was held, however, that the *attorney-client* privilege can be invoked to prevent a physician to whom the client was sent by his attorneys for examination, as distinguished from advice and treatment, from divulging the results of the examination. █ The court there declared (*City & County of San Francisco* v. *Superior Court* (1951), *supra*, 37 Cal.2d 227, 236-238 [16-20]), ''It is no less the client's communication to the attorney when it is given by the client to an agent for transmission to the attorney, and it is immaterial whether the agent is the agent of the attorney, the client, or both . . . Thus, when communication by a client to his attorney regarding his physical or mental condition requires the assistance of a physician to interpret the client's condition to the attorney, the client may submit to an examination by the physician without fear that the latter will be compelled to reveal the information disclosed. . . .

█ '' [17] It is contended that the purpose of the patient-litigant exception in subdivision 4 of section 1881 would be defeated if the attorney-client privilege in subdivision 2 can be invoked to prevent a physician from divulging the results of his examination of a person for the purpose of aiding his attorneys in the preparation of an action for personal injuries. The two subdivisions relate to two separate and distinct privileges. Since there was no physician-patient relationship, there was no physician-patient privilege to waive; the whole of subdivision 4 including the exception was therefore inapplicable. It does not follow that if there is no physician-patient privilege there can be no attorney-client privilege. █ [18] The patient-litigant exception applies only to the physician-patient privilege in subdivision 4 and there is no corresponding client-litigant exception in subdivision 2. Had Dr. Catton treated Hession before being asked to serve as an intermediate agent between Hession and his attorneys, the patient-litigant exception would apply and Dr. Catton would then have been like any other witness with knowledge of facts pertinent to an issue to be tried. █ [19] The exception could not be defeated by asking the physician to reveal his knowledge of the facts to the attorneys, for a litigant cannot silence a witness by having him reveal his knowledge to the litigant's attorney. [Citations.] [20] Similarly, if Dr. Catton should now

treat Hession, any information acquired in the course of that treatment would not be privileged, although the results of his previous examinations and his reports to Hession's attorneys would be.''

Conner, although conceding that after he brought his personal injury action the physician-patient privilege no longer attached with respect to knowledge of the facts obtained by Dr. Newsom, urges that the doctor fully related such facts or information to petitioner during the deposition and withheld only the three reports made by him to Conner's attorneys. These reports, contends Conner, come within the attorney-client privilege as being communications by himself, through an agent, to his attorneys. Such a distinction (between non-privileged facts on the one hand and reports to the attorney on the other) based upon the attorney-client privilege, it is urged, has been made in *Wilson* v. *Superior Court* (1957), 148 Cal.App.2d 433, 440-445 [8, 9] [307 P.2d 37], in which defendant school district and its counsel employed codefendant Woodward as expert upon the matters at issue in two lawsuits; and in *Grand Lake Drive In* v. *Superior Court* (1960), 179 Cal.App.2d 122, 124-129 [1-8] [3 Cal.Rptr. 621], where defendant's attorney engaged a firm of testing engineers to inspect defendant's premises. But language used in the cited decisions in discussing the problems then respectively before those courts should not be construed as supporting Conner's position on the facts before us and the law as now established. It is to be observed that the Wilson case makes no reference to civil discovery procedures for the obvious reason that the opinion was filed February 11, 1957, and the civil discovery procedures (Code Civ. Proc., §§ 2016-2035) did not become operative until January 1, 1958 (Stats. 1957, ch. 1904, p. 3322, § 3). ▓▓ And in the Grand Lake Drive In decision (at p. 127 [1b] of 179 Cal.App.2d) Justice Draper, speaking for a unanimous court, discerningly declared, ''Knowledge which is not otherwise privileged does not become so merely by being communicated to an attorney. [Citation.] ▓▓ Obviously, a client may be examined on deposition or at trial as to the facts of the case, whether or not he has communicated them to his attorney. [Citation.] ▓▓ [5] While the privilege fully covers communications as such, it does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney.''

▓▓ Here the real parties in interest would have us apply the attorney-agent-client privilege where the witness whose

*knowledge of the facts is unprivileged* testifies that he has no record or independent recollection of certain of such facts but has made reports to the client's attorneys which, so far as appears, may set forth the otherwise unrecorded facts. As pointed out by petitioner, such a holding would permit, by the deliberate destruction of records after the rendering of reports to counsel, the sealing up of nonprivileged information by the passage of time and the resultant lapse of memory on the part of the witness. This would be clearly contrary to the substance, if not the letter, of Justice Traynor's unequivocally enunciated proposition (speaking for a unanimous court in *City & County of San Francisco* v. *Superior Court* (1951), *supra,* 37 Cal.2d 227, 238 [19], quoted by Justice Draper in the Grand Lake Drive In case) that "[A] litigant cannot silence a witness by having him reveal his knowledge to the litigant's attorney." We hold that the forwarding to counsel of nonprivileged records, in the guise of reports, will not create a privilege with respect to such records and their contents where none existed theretofore. (*Cf. Holm* v. *Superior Court* (1954), 42 Cal.2d 500, 507-508 [17] [267 P.2d 1025, 268 P.2d 722]; *Coldwell* v. *Board of Public Works* (1921), 187 Cal. 510, 522 [202 P.2d 879].)

 Conner's further contention that the provisions of section 2032 of the Code of Civil Procedure indicate that the reports here in question are privileged appears to be without merit.[4] Section 2016 of the Code of Civil Procedure specifically declares, among other things, that "This article [which includes section 2032] shall not be construed to change the law of this State with respect to the existence of any privilege, whether provided for by statute or judicial decision. . . ."

For the reasons above stated, let the peremptory writ of mandate issue as prayed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

---

[4]Subdivision (a) of section 2032 gives the defendant the right to apply to the court for an order that plaintiff be examined by defendant's physician. Subdivision (b) (1) entitles plaintiff, upon his request, to a copy of such physician's written report, in which case defendant is entitled to receive from plaintiff "a like report of any examination, previously or thereafter made, of the same condition"; and subdivision (b) (2) provides that by requesting and obtaining such report plaintiff "waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same condition."