Dominick and Rosina **FRATTO**, individually and trading and doing business as Silver Fox Inn, Plaintiffs,

v.

**NORTHERN INSURANCE COMPANY OF NEW YORK**, a New York Corporation, Defendant,

Crawford Lieberum, Alvin G. Barr, Paul Lieberum and Helen Lieberum, his wife, Intervenors.

Dominick and Rosina **FRATTO**, individually and trading and doing business as Silver Fox Inn, Plaintiffs,

v.

The **HOME INSURANCE COMPANY OF NEW YORK**, a New York Corporation, Defendant,

Crawford Lieberum, Alvin G. Barr, Paul Lieberum and Helen Lieberum, his wife, Intervenors.

Dominick and Rosina **FRATTO**, individually and t/d/b as Silver Fox Inn, Plaintiffs,

v.

**NEW AMSTERDAM FIRE INSURANCE COMPANY**, a foreign corporation, et al., Defendants,

Crawford Lieberum, Alvin G. Barr, Paul Lieberum and Helen Lieberum, his wife, Intervenors.

Civ. A. Nos. 63–310, 63–311, 63–507.

United States District Court
W. D. Pennsylvania.
June 7, 1965.

James E. McLaughlin, of McArdle, Harrington, Feeney & McLaughlin, Pittsburgh, Pa., for plaintiffs.

Thomas Lewis Jones, of White, Jones & Gregg, Pittsburgh, Pa., for defendants.

Samuel J. Margiotti, of Margiotti & Casey, Pittsburgh, Pa., for intervenors.

MARSH, District Judge.

This is a non-jury trial of consolidated diversity suits wherein the plaintiffs are Dominick and Rosina Fratto. In their complaints, they seek to recover from each of the defendant insurance companies the total amount of insurance covering the Silver Fox Inn as shown in each fire insurance policy, together with interest from January 2, 1962. The Inn, which was purchased by the Frattos in May, 1961, was destroyed by a fire which occurred on January 2, 1962. In addition to technical reasons, the defendants re-

fused payment of the fire damage on the ground that the plaintiffs were responsible for the fire.

In my opinion, the plaintiffs are entitled to recover in the suits over which the court has jurisdiction. From the evidence, I make the following:

## FINDINGS OF FACT

1. Plaintiffs, Dominick and Rosina Fratto, husband and wife, are citizens of Pennsylvania. The defendants are insurance corporations. All are incorporated and have their principal places of business in states other than Pennsylvania.

2. On May 10, 1961, Rosina Fratto purchased for herself and her husband the Silver Fox Inn, located in Foxburg, Clarion County, Pennsylvania, from Crawford Lieberum, Alvin G. Barr, Paul Lieberum and Helen Lieberum, the intervenors. The price was $30,000—$25,000 for the real estate and $5,000 for the contents and a liquor license. Mrs. Fratto paid $12,000 in cash and for the balance assumed the payment of two mortgages, which were liens against the premises,—the first, to the Farmers National Bank of Emlenton, and, the second, to Francis J. McGuiness.

3. The intervenors, Crawford Lieberum, Alvin G. Barr, and Paul Lieberum and Helen Lieberum, his wife, are citizens of Pennsylvania, who by deed dated May 10, 1961, granted and conveyed to the plaintiffs the premises known as the Silver Fox Inn, together with the contents thereof and a liquor license. At the time of the conveyance, the unpaid debt of the second mortgage due to Mr. McGuiness was $13,792.36. The terms of the second mortgage required the plaintiffs to insure the premises for at least the real debt of $15,000. The plaintiffs later defaulted in payment of the second mortgage. Legal proceedings were instituted against the intervenors, as a result of which they were required to pay $14,-716.01 in satisfaction of the ensuing judgment and costs. This judgment, the second mortgage and accompanying bond were assigned to the intervenors. In this action they assert all the rights, title and interest of the equitable lien of the second mortgage to the extent of $14,716.01 on the proceeds of the insurance policies covering the premises. Plaintiffs do not contest the intervenors' rights as against them. However, since Mr. McGuiness was not named in the insurance policies as a mortgagee, the intervenors' rights to the proceeds of the policies issued by the defendant companies rise no higher than the rights of the plaintiffs.

4. At the time of trial Rosina Fratto was 79 years of age and Dominick Fratto was 90 years of age and afflicted with the disabilities of old age. At the time of the purchase of the Inn, Rosina was a quite dominant character. The Frattos had six children.

5. Plaintiffs' son, Philip Fratto, managed an inn on Route 8, south of Butler, which was also owned by the plaintiffs. This inn was named Dino's but was usually referred to as Nick's Inn.

6. On June 28, 1961, Mrs. Fratto procured insurance on the Silver Fox Inn in the amount of $50,000. In early December, 1961, her sons, Philip and Samuel Fratto, acting pursuant to her authority, procured additional insurance on the Inn in the amount of $87,000.

Prior to obtaining the additional insurance, an appraisal of the premises and contents was made by Industrial Appraisal Company. This appraisal was procured by Philip and Samuel Fratto on behalf and with the approval of their mother.

Industrial Appraisal Company made an on-the-scene visual inspection of the exterior and interior of the Silver Fox Inn. On September 5, 1961, it certified that the actual cash value (net sound insurable value) of the Inn, including contents, was $153,025. The actual cash value (net sound insurable value) of the building was certified at $137,623, and that of the contents at $15,402.

Mrs. Fratto paid for the appraisal and the premiums for the additional insurance.

7. The defendants herein named issued the following policies of fire insurance insuring plaintiffs, trading as Silver Fox Inn:

| Company | Policy No. | Amount |
| --- | --- | --- |
| Northern Insurance Company of New York | F 340 378 | $ 15,000 |
| The Home Insurance Company of New York | 532 12 51 | 20,000 |
| United States Fire Insurance Company | 21 47 90 | 10,000 |
| Centennial Insurance Company | 19672 | 10,000 |
| Ohio Farmers Insurance Company | 5727 | 10,000 |
| Scottish Union and National Insurance Company | 53–05–16 | 10,000 |
| Aetna Insurance Company | 81 81 50 | 10,000 |
| Bankers and Shippers Insurance Company of New York | 132B1559 | 10,000 |
| Sun Insurance Company | K8559344 | 10,000 |
| | Total | $105,000 |

The latter seven policies are the subjects of Civil Action No. 63–507. The $15,000 policy issued by Northern Insurance Company is the subject of Civil Action No. 63–310, and the $20,000 policy issued by The Home Insurance Company is the subject of Civil Action No. 63–311.

The total face amount of other policies issued on the building, but not sued upon in this court, is $32,000.

8. In addition to insuring the building, plaintiffs insured the contents thereof with New Amsterdam Fire Insurance Company, $10,000; Royal Indemnity Company, $10,000; and, later, Fireman's Insurance Company of Newark, New Jersey, $5,500.

The plaintiffs' claims at Civil 63–507 against New Amsterdam and Royal Indemnity for loss of the contents were withdrawn at trial and dismissed. (T., pp. 60–61, 276.)

9. The total amount of insurance covering the building was $137,000, and the total amount of insurance covering the contents was $25,500.

10. In the early morning of January 2, 1962, while all policies in suit were in full force and effect, the Silver Fox Inn was totally destroyed by fire which immediately followed a dynamite explosion. At the time, some of the windows and a door were open; some electric lights were on. The explosion was caused by a person or persons unknown. The defendants had immediate knowledge of the fire.

11. Some time after the fire, Dominic Fratto, the grandson of the plaintiffs and an attorney, consulted with Attorney James P. McArdle in connection with the preparation of proofs of loss. Attorney McArdle is a lawyer of some 34 years experience and the senior member of a large and prominent law firm in the City of Pittsburgh. Subsequently, Attorney Fratto turned the entire matter over to Attorney McArdle for settlement or prosecution of the claim of the plaintiffs.

12. Shortly after the fire, all the insurers, except Aetna Insurance Company and Fireman's Insurance Company, engaged the Keystone Adjustment Corporation of Pittsburgh, Pennsylvania, to in-

vestigate, negotiate, and adjust the loss.[1] This company was an independent adjustment corporation, the common stock of which was then owned by Joseph Hubbard, its president, and his family. Joseph Hubbard died on March 17, 1962, and Donald Hubbard, a brother, who had previously been in charge of certain of its fire claims, became its president.

13. On March 12, 1962, proofs of loss were sworn to by the plaintiffs and sent to the respective insurance companies by Attorney Fratto.

14. Prior to the death of Joseph Hubbard, he and Attorney McArdle began negotiating for settlement of the Fratto claim. Attorney McArdle made demands upon Joseph Hubbard and later upon Donald Hubbard for settlement in amounts ranging from $150,000 to a low figure of $110,000. Joseph Hubbard made an offer of settlement to Attorney McArdle in the sum of $50,000, which offer was subsequently repeated by Donald Hubbard and was never withdrawn. At the time these demands and offers were made, Attorney McArdle thought that Keystone Adjustment Corporation represented all the defendants.

Both Joseph and Donald Hubbard had asked for and received from Attorney McArdle some details concerning the valuations placed on the Inn by the Industrial Appraisal Company.

15. On April 6, 1962, representatives of all the defendants and other insurers not named in the suits met in the office of Attorney Thomas Lewis Jones of the firm of White and Jones, at which time Keystone's authority to negotiate the plaintiffs' loss was revoked. It was agreed that the handling of the Fratto claims would be under the direction and control of Attorney Jones, and that only he was to have the power of negotiation with the plaintiffs or their representatives. All the defendants were aware that Keystone had been negotiating with Attorney McArdle up to April 6, 1962.

16. This limitation on Keystone's authority was never communicated to plaintiffs or their counsel; no affirmative act was done by any representative of any defendant which could have put plaintiffs or their counsel on notice that Keystone's authority to represent them had been revoked; no representative of any of the defendants ever made any contacts with plaintiffs or their counsel. All the defendants knew that Keystone, through the Hubbards, had represented to Attorney McArdle that it had authority to negotiate and adjust the claim for them.

After April 6, 1962, Keystone had apparent authority to represent the defendants for adjustment and settlement of the plaintiffs' claim.

17. Attorney McArdle and Attorney Jones never consulted with each other about the Fratto claims prior to the filing of the suits. On April 9, 1962, Attorney McArdle wrote to Donald Hubbard advising him that he represented the Fratto family, inquired whether there was any reason why he should forbear filing suit, and suggested the desirability of settlement discussions.

18. Attorney McArdle in the negotiations with Joseph and Donald Hubbard had procured itemized evaluations for Keystone, and on May 23, 1962, in furtherance of the negotiations, authorized Industrial Appraisal Company to exhibit to Keystone Adjustment Corporation, or its representative, the plot plan showing the size and location of rooms, etc. of the Silver Fox Inn.

19. On May 24, 1962, in letters sent by Attorney Jones to Attorney Fratto, the defendants formally rejected the plaintiffs' proofs of loss.

20. On May 25, 1962, Attorney McArdle in a letter to Donald Hubbard expressed indignation at the rejection of the proofs of loss, accused the adjuster of bad faith, and stated that he was withdrawing the authorization to Industrial Appraisal Company to exhibit the appraisal data. He advised that a complaint had been dictated and that suit would be filed against each of the insur-

---

1. Keystone was a co-adjuster for Royal Indemnity Company.

ers. The complaint was dictated the same day.

21. Donald Hubbard disclosed the contents of the McArdle letter to Attorney Jones who told him to answer it. On May 31, 1962, Donald Hubbard answered the McArdle letter and stated, inter alia:

"* * * The negotiations are still open and, of course, will remain so until suit is actually filed when it will be a matter for counsel.

"Jim, you certainly know the procedures in these matters. The Companies referred the legal matters to White and Jones, as counsel on legal questions, even though as the adjuster in charge, I am to continue to negotiate or do such other things as I feel proper. * * *"

Attorney Jones was advised of the answer. Attorney McArdle and Keystone had negotiated other fire claims over the years, and the procedures referred to were in accord with a long-standing custom between them. Because of Hubbard's representation that the negotiations were still open, Attorney McArdle did not file the complaint which he had dictated.

22. Subsequently, Attorney McArdle and Hubbard met at various places, for the most part by chance, during which encounters they continued to informally negotiate and discuss settlement of the Fratto claims These casual negotiations continued in good faith until Attorney McArdle, in April, 1963, decided to file the complaints at Civil Actions 63–310 and 63–311.

23. All the defendants, including Aetna, were aware that settlement talks between Attorney McArdle and Donald Hubbard had continued until at least August of 1962.

24. Civil Actions Nos. 63–310 and 63–311 were filed on April 16, 1963; Civil Action No. 63–507 was filed on June 21, 1963; the dates of filing being, respectively, over 15 and 17 months from the date of the inception of the loss.

25. Attorney McArdle knew of the 12-month limitation clause contained in the policy. However, he forbore filing suit on behalf of plaintiffs in a reasonable belief that the claim would be paid or settled. This belief was based in considerable part upon the letter (plaintiffs' Ex. 14) of Donald Hubbard, partially quoted above, and in part upon the casual negotiation talks with Donald Hubbard.

26. Plaintiffs sustained fire damage to the building in the amount of $137,000. The sound value as of the date of the fire was $137,000.

27. After the purchase of the Silver Fox Inn in May, 1961, Rosina Fratto operated it through a resident bartender-manager until the week before Christmas, 1961; the profits were small. In 1961 Nick's Inn was operating at a loss.

Plaintiffs' sons, Philip and Samuel, participated in the management and control of the Silver Fox Inn on behalf of their aged parents, and each received compensation from the proceeds.

In December, 1961, at the direction of Mrs. Fratto, for the purpose of remodeling the barroom, Philip and Samuel removed or procured the removal from the Inn of some of the contents.

After the fire the plaintiffs swore to three proofs of loss stating that the contents destroyed were of the sound value of $15,402, which sum was the precise valuation placed on the contents by Industrial Appraisal Company. The plaintiffs did not reveal to any insurer that some of the contents had been removed from the Inn in December.

On December 20, 1961, Samuel Fratto caused the watchman, Harry Andrew Rumbaugh, to leave the premises; all other employees had previously been discharged. The Frattos then closed the Inn to all business, and the gas supply was shut off by a person or persons unknown.

28. The plaintiffs, Rosina and Dominick Fratto, were not responsible for the destruction of the Silver Fox Inn; they were not members of any conspiracy to

procure the destruction of the Inn by fire, and they did not engage or authorize any of their sons or any other person to do so.

## DISCUSSION

### The Jurisdictional Amount

■ The jurisdictional statute, 28 U.S.C. § 1332, provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs * * *." The statute must be strictly construed. Thomson v. Gaskill, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942); Home Life Ins. Co. v. Sipp, 11 F.2d 474 (3d Cir. 1926); 1 Moore, Federal Practice, ¶0.92[3.–1], pp. 838–840. McCoy v. Siler, 205 F.2d 498, 501 (3d Cir. 1953), advises that courts "should not be astute to widen federal diversity jurisdiction."

■ At Civil Action No. 63–507, the complaint states a claim against each defendant for $10,000 and interest from the date of the fire. A claim in the even amount of $10,000 does not satisfy the jurisdictional requirement. Oikarinen v. Alexian Brothers, 342 F.2d 155 (3d Cir. 1965); Salkind v. Trafalgar Hospital, 322 F.2d 947 (2d Cir. 1963); Regan v. Marshall, 309 F.2d 677 (1st Cir. 1962).

■ It is also well settled that the $10,000 claims made severally against the defendants in this civil action cannot be aggregated for the purpose of conferring jurisdiction. Thomson v. Gaskill, supra, 315 U.S. p. 447, 62 S.Ct. 673; Sovereign Camp Woodmen of the World v. O'Neill, 266 U.S. 292, 295, 45 S.Ct. 49, 69 L.Ed. 293 (1924); Riccardi v. United States Fidelity & Guaranty Company, 215 F.Supp. 687 (W.D.Mo.1963); Smith v. Abbate, 201 F.Supp. 105, 109 (S.D.N.Y. 1961); Bree v. Mutual Benefit Health & Accident Ass'n, 182 F.Supp. 181 (E.D.Pa. 1959); 1 Moore, Federal Practice, ¶ 0.97 [2], pp. 886–889; 36A C.J.S. Federal Courts, § 310(6).

■ In order to sustain jurisdiction, the plaintiffs rely on Brown v. Webster, 156 U.S. 328, 15 S.Ct. 377, 39 L.Ed. 440 (1895); Central Commercial Co. v. Jones-Dusenbury Co., 251 F. 13 (7th Cir. 1918); Intermela v. Perkins, 205 F. 603 (9th Cir. 1913);[2] Continental Casualty Co. v. Spradlin, 170 F. 322 (4th Cir. 1909). They argue that "interest can be included in determining jurisdictional amount, if it can be said that the interest is just another element of damages and not interest 'eo nomine' (interest as such)."

In our opinion the interest sued for on each $10,000 policy is not just another element of damages but is interest eo nomine, and is in any event "interest" which under the statute must be excluded in determining the jurisdictional amount.

In a suit on a $3,000 life insurance policy, when $3,000 was the jurisdictional amount, it was held in this Circuit:

"* * * [T]hat the sum of $3,-000 can never be in excess of itself, and that as the jurisdictional amount is reckoned exclusive of interest, *an item of interest growing due after the due date of the principal cannot be added to swell the claim and bring it within the statute.*" Home Life Ins. Co. v. Sipp, supra, 11 F.2d p. 475. (Emphasis supplied.)

Cf. Salkind v. Trafalgar Hospital, supra; Regan v. Marshall, supra; Athan v. Hartford Fire Ins. Co., 73 F.2d 66 (2d Cir. 1934); Alropa Corporation v. Myers, 55 F.Supp. 936 (D.Del.1944); Gilliland v. Colorado Life Co., 15 F.Supp. 367 (W. D.Mo.1936); Voorhees v. Aetna Life Ins. Co., 250 F. 484 (D.N.J.1918); 1 Moore, Federal Practice, ¶0.99[1], p. 903; 36A C.J.S. Federal Courts § 310(5).

We think Brown v. Webster, supra, followed in Continental Casualty Co. v. Spradlin and Central Commercial Co. v. Jones-Dusenbury Co., supra, is readily distinguishable. There the plaintiff, as grantee of certain land, having been

2. Intermela v. Perkins, supra, seems to support our conclusion; see the concluding sentence of the first paragraph of the opinion on page 606.

evicted by the rightful owner, sued his grantor for damages. Under the law of Nebraska, the damages recoverable included, inter alia, interest from the date of payment by the plaintiff-grantee of the purchase price. The principal demand was for damages for wrongful eviction and included interest which had accumulated prior to the eviction (at which time the cause of action accrued). Likewise, in the Continental Casualty Co. and Central Commercial Co. cases, supra, the principal amount claimed sounded in damages for failure to perform a contract, and the principal amount demanded included "the sum computed, as though it were interest * * * and not as an accessory demand."

In the cases at hand, the plaintiffs brought contract actions, pure and simple, for $10,000 on each policy and interest thereon; they have not in form or substance claimed interest as compensatory damages as was done in Brown v. Webster, supra, Continental Casualty Co. v. Spradlin, supra, and Central Commercial Co. v. Jones-Dusenbury Co., supra.[3]

In our opinion, the Pennsylvania cases cited by plaintiffs maintain the distinction between recovery of interest as an accessory demand and as an instrument in assessing compensatory damages.[4]

We conclude that this court does not have jurisdiction over the subject matter of any of the claims at Civil Action No. 63–507.

■ The defendants at Civil Actions Nos. 63–310 and 63–311 contend that the requisite jurisdictional amount is also lacking as to them. We find their argu-

ment based upon the conclusions of a computer (T., pp. 744–746) to be incomprehensible.

The claims in these actions are for $15,000 and $20,000, respectively. The total insurance on the building was $137,000. The loss caused by the fire was $137,000. We hold that the court has jurisdiction of the subject matter of these actions.

#### Proofs of Loss

Counsel for the defendants conceded that the late filing of the proofs of loss was of no consequence if there was a total destruction of the insured building, which we found to be the fact (T., p. 751).

#### The 12-Month Limitation Period

■■ Civil Actions 63–310 and 63–311 were filed approximately 15½ months after the loss. Up to April 6, 1962, Keystone had actual authority to act for the defendants in all matters pertaining to the ascertainment and settlement of the loss occasioned by the destruction of the plaintiffs' property covered by the defendants' policies. After April 6th, it had apparent authority to negotiate and adjust on behalf of all the defendants. Restatement, Agency 2d, § 8; cf. Zager v. Gubernick, 205 Pa.Super. 168, 208 A. 2d 45 (1965); Bonnert v. Pennsylvania Ins. Co., 129 Pa. 558, 18 A. 552 (1889). In any event, by permitting plaintiffs' attorney to rely upon Hubbard's representations, defendants are estopped to deny Hubbard's authority. Restatement, Agency 2d, § 8(B) (1) (b).

---

3. See the analysis of Brown v. Webster, supra, and the enlightening criticism of Continental Casualty Co. v. Spradlin, supra, by Judge Davis in Voorhees v. Aetna Life Ins. Co., supra, 250 F. pp. 485–486.

4. Contrast: Citizens' Natural Gas Co. v. Richards, 130 Pa. 37, 18 A. 600 (1889); City of Allegheny v. Campbell, 107 Pa. 530 (1884); Eckert v. Wilson, 12 Serg. & R. 393 (1825); Waugh v. Commonwealth, 394 Pa. 166, 146 A.2d 297, 300, f.n. 5, cited by plaintiffs, with Samuels v. California Insurance Company, 192

Pa.Super. 484, 162 A.2d 48 (1960), and J. Purdy Cope Hotels Co. v. Fidelity-Phenix F. Ins. Co., 126 Pa.Super. 260, 191 A. 636 (1937). We might note in passing that the general definition of "interest" covers both compensation for the use or forbearance of money and as damages for its detention. We have no indication that Congress had a more restricted definition of "interest" in mind in drafting the statute. 47 C.J.S. Interest § 1; 19 P.L.E., Interest and Usury, § 2.

Keystone's president, Joseph Hubbard, and Attorney McArdle seriously attempted to adjust the loss; their negotiations were such as to lead the attorney to reasonably believe that the defendants would settle the claim for a substantial figure. McArdle demanded $150,000 and came down to $110,000. Joseph made a counter-offer of $50,000. In all the circumstances, this counter-offer could reasonably be construed as a firm offer and justified an expectation of eventual settlement.

After Joseph's death in March, 1962, the successor-president, Donald Hubbard, resumed the negotiations and renewed the $50,000 counter-offer.

To fortify plaintiffs' demand, McArdle disclosed the opinions and valuations made by Industrial Appraisal Company to both Joseph and Donald Hubbard.[5] In furtherance of the negotiations, on May 23rd, while quite unaware that Keystone's authority had been revoked, he authorized Industrial to give Keystone the plot plan of the rooms. He immediately countermanded this authority when on May 24th, the defendants, by their attorney, without prior notice to him or the plaintiffs, rejected[6] the proofs of loss submitted on March 12, 1962. In pique and anger, he accused Keystone of bad faith, and advised that he had dictated a complaint against the defendants, which he in fact had done.

The accusation was justified because Keystone, since April 6th, had, indeed, been negotiating without authority, and holding out the hope of settlement in bad faith. All the defendants had actual or constructive knowledge of Keystone's conduct. Good faith required that McArdle should have been told promptly that negotiations with Keystone were at an end; that any offers of settlement theretofore made by Keystone were withdrawn; and that thereafter all negotiations were to be with Attorney Thomas

Lewis Jones. Such was never done. Instead, the defendants, by their attorney, instructed Donald Hubbard to answer McArdle's letter. His answer assured McArdle that "the negotiations are still open and, of course, will remain so until suit is actually filed when it will be a matter for counsel. * * * I am to continue to negotiate or do such other things as I feel proper."

Negotiate they did (although informally and sporadically), until the suits were filed in April, 1963. In the meantime nothing occurred to cause Attorney McArdle to revise his earlier belief that defendants would settle the claim for some substantial figure or to cause him to believe that the 12-month limitation clause would be invoked.

We think the conduct of the defendants, through their authorized representatives, misled plaintiffs' attorney into forming a reasonably grounded belief that the claim would eventually be settled. Unwilling to wait longer, he filed the actions in April, 1963. The actions, in our opinion, were timely brought.

Courts generally do not require very stringent evidence to defeat a limitation clause. While the evidence here does not establish a waiver of the 12-month clause, it is sufficient to excuse the plaintiffs from strict compliance therewith. Terpeluk v. Insurance Company of North America, 189 Pa.Super. 259, 150 A.2d 558 (1959); Sudnick v. Home Friendly Ins. Co. of Maryland, 149 Pa.Super. 145, 27 A.2d 468 (1942);[7] O'Connor v. Allemannia Fire Ins. Co. of Pittsburgh, 128 Pa. Super. 336, 194 A. 217 (1937); O'Brien v. Sovereign Camp, W. O. W., 122 Pa. Super. 39, 184 A. 546 (1936); 19 P.L.E., Insurance, § 421; and see Insurance Co. of North America v. Board of Education, 196 F.2d 901 (10th Cir. 1952), containing comment on the Pennsylvania cases.

5. T., pp. 520, 533; plaintiffs' Ex. 12.

6. The letters rejecting the proofs of loss specifically stated that the rejection "does not in any manner admit or deny liability * * *."

7. In the Sudnick case, an attorney represented the claimant in the negotiations.

The defendants objected to the admission in evidence of certain documents offered in support of Attorney McArdle's testimony that to the knowledge of defendants, McArdle continued to negotiate and discuss settlement with Donald Hubbard for months after his authority had been revoked. They contended vigorously that their admission violated the attorney-client relationship existing between defendants and Attorney Jones. We do not think the objections are well founded.

Those documents which Keystone, the independent contractor, wrote to the defendants are certainly not privileged from discovery and we so held in our Memorandum and Orders of June 22, 1964 and December 3, 1964.

The verbal reports Hubbard made to Attorney Jones and communicated by him in writing to the defendants acquired no privileged status simply because the unprivileged verbal reports of Hubbard were communicated to the defendants by way of their attorney. Obviously, there is nothing confidential about the fact of negotiations between McArdle and Hubbard; the former may testify to the fact; the latter's communication of the fact to the defendants by way of Attorney Jones is material to corroborate the fact and to pinpoint more precisely the time when the negotiations occurred.[8] Moreover, copies were sent to the General Adjustment Company and the adjuster for Fireman's Insurance Company, neither of whom were engaged as agents of the defendants.[9] It seems clear that the documents containing such disclosures do not possess the confidentiality necessary to sustain the attorney-client privilege. Cf. 8 Wigmore, Evidence, § 2311, p. 600 (McNaughton rev. 1961); San Francisco Unified School Dist. v. Superior Court, 55 Cal.2d 451, 11 Cal.Rptr. 373, 359 P.2d 925, 82 A.L.R.2d 1156 (1961).

It should be noted that the ruling admitting plaintiffs' Exhibit 24 into evidence was subsequently vacated over the plaintiffs' objection and impounded (T., p. 435) for the reason that the exhibit was a letter from the claims manager of Aetna Insurance Company to its counsel, White and Jones, Esqs., and privileged. Its contents and the evidence pertaining thereto were not considered in the fact finding.

*Burden of Proof*

In their answers the defendants averred that the cause of the destruction of the Silver Fox Inn was an explosion resulting from dynamite placed therein by the plaintiffs or by their servants, agents or employees, followed by fire. Thus, the defendants had the burden of proving (1) that the fire was of incendiary origin, and (2) that the plaintiffs were responsible therefor. We think they sustained their burden as to the first fact alleged, but failed as to the second.

We recognize that direct evidence of arson can rarely be obtained, and that circumstantial evidence is sufficient to establish the crime. Here, the inferences arising from the circumstantial evidence point the finger of suspicion at certain members of the Fratto family, but we think the inferences fall short of proving by a fair preponderance of the evidence that the plaintiffs, or either of them, were responsible for the explosion or conspired with their sons or other persons to cause the fire. It is to be noted that prior to the fire, the Inn was being remodeled. This could easily account for the closing of the Inn, the temporary discharging of the employees, removal of some of the contents, and possibly for shutting off the gas.[10] The removal of some of the contents by Philip and Samuel Fratto, at the direction of Mrs. Rosina Fratto, might appear to be suspicious and yet it was not conducted surreptitiously; the amount of insurance placed

8. Attorney Jones sent copies of these reports to Keystone from whose file they were taken and disclosed to plaintiffs' counsel (T., pp. 471, 495, 498, 499, 513).

9. T., pp. 431, 433.

10. Mr. Bello, the contractor engaged to remodel the Inn, died prior to trial.

272

on the building was based on values determined by a reputable appraisal company; the intensive police investigation was unable to produce sufficient evidence to warrant any accusation of arson.

 The alleged false proofs of loss made to the insurers of the contents would not relieve the defendants from their liability as insurers of the building. Cf. Woodward v. Pittsburg Underwriters, 40 Pa.Super. 143 (1909). Since issue of fact No. 5 (as stated in ¶VI of the "Amended Pre-Trial Stipulation"), pertaining to the falsity of the claim for the contents of the Inn, was taken out of the case (T., pp. 60–61), the evidence in that respect was admitted and considered solely in connection with the credibility of the plaintiffs. It is further to be noted that there is no issue of law relating to the alleged falsity of proofs of loss contained in ¶IX of the "Amendment to Pre-Trial Stipulation".

*Interest*

The invitation to counsel to brief the interest problem (T., p. 789) was not accepted. It is our opinion that in the circumstances of the case, interest begins to run from May 11, 1962, sixty days after the proofs of loss were presented. 19 P.L.E., Insurance, § 393.

CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and subject matter in Civil Actions Nos. 63–310 and 63–311, by reason of diversity of citizenship and the requisite jurisdictional amounts.

2. The claims of the plaintiffs at Civil Action No. 63–507 against the New Amsterdam Fire Insurance Company and the Royal Indemnity Company, insurers of the contents of the Silver Fox Inn, and against United States Fire Insurance Company, Centennial Insurance Company, Ohio Farmers Insurance Company, Scottish Union & National Insurance Company, Aetna Insurance Company, Bankers and Shippers Insurance Company of New York, and Sun Insurance Company, insurers of the building, should be dismissed for the reason that each claim lacks the jurisdictional amount.

3. By reason of the conduct of the defendants and of their authorized agent, Keystone Adjustment Corporation, the 12-month limitation clauses contained in the policies involved at Civil Actions Nos. 63–310 and 63–311 were extended, and these actions were timely commenced.

4. The plaintiffs are entitled to recover the sum of $15,000 from the defendant, Northern Insurance Company of New York, and the sum of $20,000 from the defendant, The Home Insurance Company of New York, together with interest at the rate of 6% from May 11, 1962.

5. The intervenors, Crawford Lieberum, Alvin G. Barr, Paul Lieberum and Helen Lieberum, his wife, are entitled to $14,716.01, with interest, to be paid by the defendants, Northern Insurance Company of New York and The Home Insurance Company of New York, out of the amounts to which the plaintiffs are entitled.

6. At Civil Action No. 63–310 judgment should be entered in favor of plaintiffs and against Northern Insurance Company of New York in the sum of $15,000 with interest from May 11, 1962, and costs.

7. At Civil Action No. 63–311 judgment should be entered in favor of plaintiffs and against The Home Insurance Company of New York in the sum of $20,000, with interest from May 11, 1962, and costs.