[No. A036900. First Dist., Div. Three. May 22, 1987.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
ROBERT GREEN FAIRBANK, Real Party in Interest.

---

**COUNSEL**

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Dane R. Gillette and Landra E. Rosenthal, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Dek Ketchum and Gordon L. Rockhill for Real Party in Interest.

Ephraim Margolin and Bradford L. Battson for Amici Curiae on behalf of Real Party in Interest.

OPINION

**WHITE, P. J.**—This petition for writ of mandate filed by the People challenges a pretrial ruling denying a prosecution request. We conclude that the court erred in failing to require defense counsel to provide access to or information about alteration of some possible murder weapons.

Robert Fairbank has been charged by information with first degree murder (Pen. Code, § 187), with special circumstances alleged under Penal Code sections 190.2, subdivision (a)(17)(iii), 190.2, subdivision (a)(17)(vi) and 190.2, subdivision (a)(18). While the information was pending, the prosecution obtained letters purportedly authored by Fairbank and mailed to another county jail inmate. These letters provided details of Fairbank's case in the expectation that the other inmate would confess to the crimes charged against Fairbank. The letters state that the author "foolishly told lawyer where weapons were" and that the author's attorneys "now have weapons and D.A. doesn't know it yet!" An allusion is made in the documents to the author having stashed the "w's in bushes about a mile away" and having "told lawyer," who now "has them."

After a handwriting expert confirmed that the letters were written by Fairbank, the prosecutor moved the trial court to compel both defense counsel to produce the physical evidence. At the first hearing on the motion, the court pointedly asked one defense counsel if he was "aware" of his duties to the court. Counsel replied that he was. The court denied the motion.

The prosecutor moved the court to reconsider its ruling. The court reaffirmed its ruling and engaged in some colloquy with counsel about what to do if the jailhouse letters themselves were introduced into evidence, bringing to the trier of fact's attention the allegation that counsel possess the weapons. The court did not resolve that question. This petition followed.

(1) IF DEFENSE COUNSEL COMES INTO POSSESSION OF PHYSICAL EVIDENCE RELATED TO CHARGES AGAINST HIS OR HER CLIENT, MUST THAT EVIDENCE BE TURNED OVER TO THE POLICE AND/OR THE PROSECUTION?

The parties appear to agree that defense counsel may not retain physical evidence pertaining to the crime charged against his or her client. This principle was recognized by the California courts in *People* v. *Lee* (1970) 3 Cal.App.3d 514, 526 [83 Cal.Rptr. 715], where the court explained: "It has been held 'an abuse of a lawyer's professional responsibility knowingly to take possession of and secrete the instrumentalities of a crime.' (*In re Ryder,* 381 F.2d 713, 714.) A defendant in a criminal case may not permanently sequester physical evidence such as a weapon or other article used

in the perpetration of a crime by delivering it to his attorney. Section 135 of the Penal Code provides: 'Every person who, knowing that any book, paper, record, instrument in writing, or other matter or thing, is about to be produced in evidence upon any trial, inquiry, or investigation whatever, authorized by law, willfully destroys or conceals the same, with intent thereby to prevent it from being produced, is guilty of a misdemeanor.' In a well reasoned opinion in *State* v. *Olwell,* 64 Wn. 2d 828 [394 P.2d 681, 16 A.L.R.3d 1021], the Supreme Court of the State of Washington described the obligation of an attorney who receives such evidence from his client as follows: 'The attorney should not be a depository for criminal evidence (such as a knife, other weapons, stolen property, etc.), which in itself has little if any, material value for the purposes of aiding counsel in the preparation of the defense of his client's case. Such evidence given the attorney during legal consultation for information purposes and used by the attorney in preparing the defense of his client's case, whether or not the case ever goes to trial, could clearly be withheld for a reasonable period of time. It follows that the attorney, after a reasonable period, should, as an officer of the court, on his own motion turn the same over to the prosecution.' (*State* v. *Olwell, supra,* pp. 684-685). Although, as the Court held in *State* v. *Olwell, supra,* the fact that the client delivered such evidence to his attorney may be privileged, the physical object itself does not become privileged merely by reason of its transmission to the attorney. (Cf., *Suezaki* v. *Superior Court,* 58 Cal.2d 166, 176 [23 Cal.Rptr. 368, 373 P.2d 432, 95 A.L.R.2d 1073]; *San Francisco Unified School Dist.* v. *Superior Court,* 55 Cal.2d 451, 457 [11 Cal.Rptr. 373, 359 P.2d 925, 82 A.L.R.2d 1156]; *Holm* v. *Superior Court,* 42 Cal.2d 500, 507-508 [267 P.2d 1025, 268 P.2d 722].)"

In *People* v. *Meredith* (1981) 29 Cal.3d 682 [175 Cal.Rptr. 612, 631 P.2d 46], the California Supreme Court applied and extended this principle to uphold a ruling which required a defense investigator to testify about his observations of the victim's wallet before he seized it and before counsel turned it over to the police. Balancing competing considerations, the *Meredith* court concluded that "an observation by defense counsel or his investigator, which is the product of a privileged communication, may not be admitted unless the defense by altering or removing physical evidence has precluded the prosecution from making that same observation." (*Id.,* at p. 686).

Analyzing cases from other jurisdictions, the *Meredith* court first determined that the attorney-client privilege "is not strictly limited to communications, but extends to protect observations made as a consequence of protected communications." (*People* v. *Meredith, supra,* 29 Cal.3d at p. 693). It then addressed the question of whether the privilege would apply when the defense "by removing or altering evidence, interferes with the prosecu-

tion's opportunity to discover that evidence." (*Ibid.*, fn. omitted.) None of the earlier cases had confronted directly the question of whether removal or alteration should affect the defendant's right to assert the attorney-client privilege as a bar to testimony concerning the original location or condition of the evidence. The *Meredith* court concluded that "whenever defense counsel removes or alters evidence, the statutory privilege does not bar revelation of the original location or condition of the evidence in question.[1] We thus view the defense decision to remove evidence as a tactical choice. If defense counsel leaves the evidence where he discovers it, his observations derived from privileged communications are insulated from revelation. If, however, counsel chooses to remove evidence to examine or test it, the original location and condition of that evidence loses the protection of the privilege. Applying this analysis to the present case, we hold that the trial court did not err in admitting the investigator's testimony concerning the location of the wallet." (*Id.*, at p. 695.)

In the court below, Fairbank argued that *Goldsmith* v. *Superior Court* (1984) 152 Cal.App.3d 76 [199 Cal.Rptr. 366], not *Meredith, supra,* 29 Cal.3d 682, controlled the result in this case. In *Goldsmith* the prosecution moved for pretrial discovery of a 9mm pistol the defendant was alleged to have used in several crimes. Police reports, witness interviews and testimony at the preliminary hearing was said to " 'demonstrate' " that the defendant had actual or constructive possession of the weapon or knowledge of its location. The court ordered production by the defendant and/or his attorney. At an in camera hearing, defense counsel represented to the court that he neither possessed the gun nor had control over it, but declined, on grounds of attorney-client privilege, to reveal whether he knew where the gun was. There was no suggestion in the record that counsel ever removed, altered or otherwise interfered with the prosecution's opportunity to discover the gun. After the in camera hearing, the court issued an order barring the defendant from producing any evidence that the firearm was not the one used in the charged crimes. The *Goldsmith* court set aside this order, finding that the initial court order exceeded permissible prosecution discovery and

---

[1]In a footnote at this point the court states: "In offering the evidence, the prosecution should present the information in a manner which avoids revealing the content of attorney-client communications or the original source of the information. In the present case, for example, the prosecutor simply asked Frick where he found the wallet; he did not identify Frick as a defense investigator or trace the discovery of the wallet to an attorney-client communication. [¶] In other circumstances, when it is not possible to elicit such testimony without identifying the witness as the defendant's attorney or investigator, the defendant may be willing to enter a stipulation which will simply inform the jury as to the relevant location or condition of the evidence in question. When such a stipulation is proffered, the prosecution should not be permitted to reject the stipulation in the hope that by requiring defense counsel personally to testify to such facts, the jury might infer that counsel learned those facts from defendant. (Cf. *People* v. *Hall* (1980) 28 Cal. 3d 143, 152 [167 Cal.Rptr. 844, 616 P.2d 826].)" (*People* v. *Meredith, supra,* at p. 695).

violated the defendant's privilege against self-incrimination. The *Goldsmith* court distinguished *Meredith* on the ground that there was no suggestion counsel had removed, altered or otherwise interfered with the prosecution's opportunity to discover the gun. The crux of the *Goldsmith* ruling was that production of the gun by the defendant would be incriminating: "First, the act itself of producing the gun, without more, has strong testimonial aspects. Second, the gun alone, without more may produce incriminating evidence. . . . [¶] Since the discovery order to produce the pistol lightens the prosecution's burden and would serve as an evidentiary link in the chain of guilt, it violates defendant's constitutional privilege against self-incrimination. The order is therefore beyond the court's jurisdiction, and is void and unenforceable." (152 Cal.App.3d 76, 87-88).

Neither *Meredith* nor *Goldsmith* is identical to this case. In *Meredith* counsel voluntarily delivered the wallet to the police. In *Goldsmith* counsel represented to the court in camera that he did not possess or control the weapon. Here counsel have neither voluntarily relinquished the weapons, nor denied possession or control. They have informed the trial court that they are aware of their obligations to the court, but their brief below displayed an incomplete understanding of their obligations: "Defense counsel's obligations are to the court and their client. Hence counsel cannot disclose whether they have or do not have the items in question. If they do not, then that is the end of the issue insofar as the case is concerned. If they are aware of the items' location and have not taken possession of the items, then they can satisfy their ethical obligations to both the court and their client by leaving the items where they are in accordance with the holding of *Meridith* [*sic*]. In the event that defense counsel are in possession of the items sought, they cannot secret [*sic*] or destroy the items."

 In the trial court, defense counsel did not acknowledge a duty to turn over the weapons if they possessed them. They conceded that they could not secrete or destroy the items, but they did not explain when or under what circumstances they were required to produce the weapons or turn them over to the police if they did not possess them. This court's written questions to them apparently caused defense counsel to reframe their views of their obligations. In their brief in opposition to the petition, they have admitted that if counsel comes into possession of physical evidence related to the case, "[h]e must present the evidence to the court and to the triers-of-fact." However, they argue at length that they have no duty to turn over the evidence to the prosecutor prior to trial.

(2) MAY COUNSEL DELAY TURNING OVER THE EVIDENCE AND INFORMING THE COURT OF ALTERATION OF EVIDENCE UNTIL TRIAL ON THE UNDERLYING CHARGES?

Real party's argument to this court is that defense attorneys cannot be compelled to answer questions about or turn over crime-related physical

evidence prior to trial. He draws support for this argument from the defendant's right to be free from compelled self-incrimination and from *Goldsmith's* discussion of that right. Real party distinguishes *Meredith* on the ground that the *Meredith* court did not address the interplay between the privilege against self-incrimination and the prosecution's right to compel production of physical evidence.

Real party's argument depends entirely upon the false premise that when defense counsel turns over physical evidence or describes its location before removal he or she incriminates the defendant. While it may well be true that the prosecution has better investigating tools than the defense, it does not follow that defense counsel *must* have learned the location of the evidence from the defendant. Just as the police may follow many leads to evidence, so too may the defense. As a practical matter, of course, if the jury were to learn that the police recovered the murder weapons from defense counsel, it might speculate that defendant provided the clue about location. However, as explained in *Meredith, supra,* 29 Cal.3d 682, 695, footnote 8 (*ante,* fn. 1), the defense may avoid such adverse inference by stipulating to a limited explanation of how the murder weapon was recovered.

Real party may be more concerned with lightening the prosecution's load at trial than with actually having the case proved through self-incrimination. The two concepts are parts of the same fabric. As explained in *In re Misener* (1985) 38 Cal.3d 543, 558 [213 Cal.Rptr. 569, 698 P.2d 637], there is an "aspect of the privilege against self-incrimination that requires the prosecution to carry the entire burden of convicting a defendant. The privilege forbids compelled disclosures from the defendant that will aid the prosecution."

Real party cites California case authority forbidding compelled discovery of defense information, such as alibi witness lists (*Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673] and *Reynolds* v. *Superior Court* (1974) 12 Cal.3d 834 [117 Cal.Rptr. 437, 528 P.2d 45]), defense witness lists (*Allen* v. *Superior Court* (1976) 18 Cal.3d 520 [134 Cal.Rptr. 774, 557 P.2d 65]), defense notes of interviews with witnesses (*People* v. *Collie* (1981) 30 Cal.3d 43 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776]) and defense statements for impeachment of defense witnesses after they have testified on direct examination (*In re Misener, supra,* 38 Cal.3d 543). However, none of these cases even hints that the prohibition applies as well to physical evidence of the crime possessed by the defense.

In order to import the *Prudhomme* principles into a *Meredith* case, real party cites *Goldsmith.* But while the original order in *Goldsmith* required

both counsel and the defendant to produce the gun, the appellate opinion focused entirely upon the order against the defendant. The *Goldsmith* court was able to avoid the implications of *Meredith* only by noting that there was no suggestion in the record that defense counsel had removed, altered or otherwise interfered with the prosecution's opportunity to discover the gun.

It in no way disparages the *Prudhomme* line of cases to say, as we do, that they do not apply where the prosecution does not seek witness lists or defense-generated notes or witness statements, but instead only access to physical evidence concerning the crime possessed by defense counsel. To read those cases as permitting defense counsel to obtain and withhold physical evidence concerning the crime charged against the defendant would directly clash with the principles discussed in *Meredith*.

The *Meredith* court noted that "to bar admission of testimony concerning the original condition and location of the evidence in such a case permits the defense in effect to 'destroy' critical information; it is as if . . . , the wallet in this case bore a tag bearing the words 'located in the trash can by Scott's residence,' and the defense, by taking the wallet, destroyed this tag. To extend the attorney-client privilege to a case in which the defense removed evidence might encourage defense counsel to race the police to seize critical evidence." (*People* v. *Meredith, supra,* 29 Cal.3d 682, 694). Similarly, to permit counsel to retain possible murder weapons (if they possess them) or information about where the weapons were found (if removed or altered but no longer possessed) until trial would encourage other defense counsel to race the police to seize or alter critical evidence. Even if counsel plan to present the evidence at trial, they could skew the investigation of the case and in another case, prevent the police and prosecution from developing a strong enough case for trial. They could also require the police to engage in pointless investigation for evidence held by defense counsel.

(3) WHAT STEPS SHOULD A TRIAL COURT TAKE TO ENSURE THAT DEFENSE COUNSEL MEET THEIR LEGAL OBLIGATIONS?

▇▇ We share the trial court's optimism that defense counsel, aware of their legal obligations to the court, will uniformly fulfill them. The legal obligations should be self-executing and no motion by the prosecution or order by the court should be required to enforce them. However, confusion about defense counsel's obligations permeated the proceedings below and has surfaced in the briefing before this court. We wish to dispel emphatically that confusion so that proceedings such as these will not be required in future cases.

*Meredith* means what it says. The defense decision to remove or alter evidence is a tactical choice. If counsel or an agent of counsel chooses to

remove, possess, or alter physical evidence pertaining to the crime, counsel must immediately inform the court of the action. The court, exercising care to shield privileged communications and defense strategies from prosecution view, must then take appropriate action to ensure that the prosecution has timely access to physical evidence possessed by the defense and timely information about alteration of any evidence.

We reject amicus's suggestion that prosecution access to the physical evidence should depend upon the prosecution's showing of "need" for the evidence. The obligation to provide the prosecution with access to physical evidence and information about its alteration is absolute. Defense counsel may not use seizure or alteration of evidence as an excuse to pretry the prosecution's case or test the court's sympathies.

Let a peremptory writ of mandate issue compelling the San Mateo County Superior Court to vacate its order denying the prosecution's motion to compel production of physical evidence and to take any further action necessary to ensure compliance with the views expressed herein.

Scott, J., and Merrill, J., concurred.

A petition for a rehearing was denied June 11, 1987, and the petition of real party in interest for review by the Supreme Court was denied August 13, 1987.